### JOHN C. BRIGGS *vs.* NORMAN MERRILL.

Where, in the course of a trial at the circuit, the defendant objects to evidence offered by the plaintiff, and excepts to the ruling of the justice, admitting it, it is erroneous to order a verdict in favor of the plaintiff, subject to the opinion of the court, as the defendant is thereby deprived of the opportunity of having his exceptions considered.

Such a ruling, under such circumstances, is a mistrial; and a new trial should be ordered, on account of the error, unless the exceptions are waived by the defendant.

If the plaintiff moves for judgment on the verdict, submitting his case and points without argument, and the defendant opposes the motion wholly upon the merits, by submitting, without argument, his points, in which no reference whatever is made to the exceptions taken upon the trial, the latter will be deemed to have waived his exceptions taken at the trial, and consented that the court might decide the motion upon the merits, irrespective of his exceptions.

Neither the payee, nor any holder, of a promissory note given in part perform-

ance of a fraudulent bargain, who is not an innocent, *bona fide* holder for value, before it becomes due, can enforce its collection, against the maker. If a note be given for the price of property purchased in fraud of the payee's creditors, the law will not aid in carrying out any portion of the fraudulent bargain upon which it was given, but will leave all the parties who are chargeable with notice, to rely upon the option of the maker for the performance of the apparent obligation.

A receiver does not stand in the situation of an innocent, *bona fide* holder for value. He acquires title by legal process, and not in the regular course of dealing in commercial paper.

A note, being of no legal value, as against the maker, in the hands of a receiver, or a judgment creditor of the payees, the taking of it by such creditor, upon supplementary proceedings against the payees, for the purpose of having it applied to the satisfaction of his judgment, cannot operate in law as a ratification or sanction of the bargain upon which the note was given; or estop such creditor from insisting that the bargain was void as to him, by reason of the fraud in which it was conceived and carried out, and that the maker acquired no title to the property for the purchase money of which it was given, as against the claims of such creditor.

A judgment creditor may take a promissory note given by a third person to his debtor, by virtue of his execution or proceedings supplementary, without thereby relinquishing his right to take property of the debtor, for the purchase money of which the note was given.

MOTION for judgment upon a verdict in favor of the plaintiff, taken subject to the opinion of the court. The facts are sufficiently set forth in the opinion of the court.

*S. S. Morgan,* for the plaintiff.

I. The taking of the note by Merrill and procuring the order of the court that it should be applied to the payment of Merrill's debt was a ratification by Merrill of the sale of the wagon and harness. When a party with full knowledge of all the facts affirms a contract, he is estopped from afterwards disaffirming it. (*Bronson* v. *Wiman,* 10 *Barb.* 407.) The receiver did not take the note in the ordinary course of receivership. On the contrary, Merrill made a special application to the court that this note should be taken by the receiver and applied to the payment of Merrill's debt.

Briggs *v.* Merrill.

II. Suppose Merrill had stood by at the sale of the wagon and harness by Alexander M. to John C. Briggs, and upon Alexander M. Briggs taking the $100 note, Merrill had received it from Alexander M., and agreed to apply it on his (Merrill's) demand; could Merrill afterwards question the sale from Alexander M. to John C.? If he could not, then clearly he cannot in this case; for with full knowledge of the sale and the purpose for which the note was given he did take the note and apply it on his debt. Merrill having taken the note with full knowledge of the consideration for which it was given, is estopped from questioning the validity of the sale of the wagon and harness; by his own act he has ratified the sale of the property to John C. (*Lawrence* v. *Taylor*, 5 *Hill*, 107. *Murray* v. *Bininger*, 3 *Keyes*, 107.)

III. A creditor, by accepting a dividend under an assignment, is estopped from questioning the validity of the assignment. (*See opinion of Nelson, J., in Allen* v. *Roosevelt*, 14 *Wend.* 100.) A party taking under a will is estopped from denying its validity. (*Jackson* v. *Thompson*, 6 *Cowen*, 178.)

IV. If a party stands by and sees another sell goods and treat them as his own, without interposing his objection and title, he is estopped from making claim to the goods, thereafter. So if A. sells goods belonging to B. and that without the knowledge or consent of B., yet if B. after being informed of the circumstances of the sale, accepts the amount or any part of the consideration of the sale, he is estopped from repudiating the sale. (*Tilton* v. *Nelson*, 27 *Barb.* 595. *Dezell* v. *Odell*, 3 *Hill*, 215.) Where a wife has, after the termination of coverture, recognized the validity of a sale upon a mortgage foreclosure, and accepted the surplus money arising upon the sale, she is estopped from denying the validity of the foreclosure. (*Tilton* v. *Nelson*, 27 *Barb.* 595.) Under such circumstances the party is concluded from denying what his own

conduct has asserted, or from interfering in any way with titles which he is estopped to controvert. (*Ib.*) It frequently occurs that an estoppel cannot be pleaded. (*Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 480.) It has been decided that a judgment need not be pleaded by way of estoppel, but may be given in evidence, as well as pleaded in bar, under the general issue. (*Wood* v. *Jackson,* 8 *Wend.* 9. *Dunckle* v. *Wiles,* 6 *Barb.* 515.) If the defendant in this action erred or was mistaken in his rights under the proceedings supplemental to execution, he has no remedy. A party cannot reap advantage from his own mistakes. (*Dewey* v. *Bordwell,* 9 *Wend.* 65.) As the case now stands, the defendant in this action has the note which was given for the wagon and harness, and he has the wagon and harness also. In the language of Judge MULLIN, "the defendant cannot keep both wagon and note." Yet he has both, and does not offer to return either, claiming to be entitled to both.

The plaintiff should have judgment upon the verdict.


*Geo. W. Smith,* for the defendant.

I. The plaintiff's right to recover in this action rests upon the facts as they existed at the commencement of this suit. He cannot avail himself of a title arising afterwards, except by a supplemental pleading. 1. The sale of the property was lawful when made, and the defendant pursued only his legal remedy. A proceeding lawful when it is taken, cannot be made wrongful by matter *ex post facto.* 2. If the defendant was right in making the levy and sale, which the finding of the judge assumes, then there was no wrongful taking or conversion; and how could the subsequent obtaining and application of the note of itself make the taking wrongful? 3. The plaintiff, to recover, was obliged to prove the wrongful taking and conversion, alleged in the complaint. In this he entirely fails. There is a failure to prove the complaint, in its en-

tire scope and meaning.  4. A recovery in this case must be founded upon the idea that the fraudulent purchaser of property may maintain an action against one taking it by virtue of a lawful lien, provided the latter subsequently comes, even in some other proceeding, to the possession of the consideration paid by the fraudulent purchaser.  It is submitted, that the fact of obtaining such consideration in this way, has no legal bearing upon the case.  5. The note was void in the hands of the judgment debtors, and it was also void in the hands of the receiver, since he only took their title and rights.  In point of law, the defendant takes no benefit from the note.  (*Nellis* v. *Clark,* 20 *Wend.* 24.   *S. C.,* 4 *Hill,* 424.)

II. Equity will not shield a fraudulent actor from the consequences of his own illegal conduct.  A party may in many cases lose the fruits of an unlawful enterprize, and yet remain liable on obligations incurred in its prosecution.  That the plaintiff should lose the property that he attempted unlawfully to withdraw from the reach of the defendant's execution, while his note may also be enforced by a bona fide holder, is simply the decree of the law which pronounces his purchase fraudulent and void. 1. If equity could relieve in any case of this kind, it would not do so at the risk of injuring another party. Nothing but the actual payment of the note could induce the court to set it off against the legal interest acquired under the levy on the goods.   Otherwise, the judgment creditor might lose his lien, be charged with costs for making a lawful levy, and yet realize nothing from the note.   In fact the defendant has received nothing on his judgment, except the proceeds of the sale of the wagon and harness. 2. Granting that the law would not compel the plaintiff to pay this note, or that having seized the consideration of the note, the defendant could be restrained from proceeding to collect it, then it is not against the note that the plaintiff must seek relief, but against the levy and sale

of the goods.   But the court will not intervene to protect
a party in the possession of the fruits of his frauds, or of
his violations of the law.   If the note is valid, the defend-
ant may avail himself of it by as clear an equity as could
any other creditor.   The plaintiff thereby suffers no greater
loss, and the defendant receives only his just demand.
3. It would be highly inequitable to subject the defend-
ant to costs, and deprive him of the interests he had ac-
quired by a regular levy and sale of the goods.   In effect,
this judgment would work a forfeiture to this extent, as
a penalty for appropriating this note.   And yet it was not
against legal conscience for the defendant to avail himself
of a remedy given by the law.   He gets only the amount
due on the judgment.   That the plaintiff is thus made to ·
pay a portion of the judgment against his fraudulent con-
federates is not the fault of the defendant, but the just
operation and necessary rigor of the law.   4. Should this
judgment be supported, the defendant may be imprisoned
upon it, not for a wrongful taking and conversion of the
plaintiff's property, for that is not pretended, but in effect
because of his obtaining the application of this note upon
his judgment by a judicial order.   5. When the plaintiff
issued this note, he exposed himself to the danger of
losing the consideration, and also of being compelled to
pay the note.   It is of no legal moment that both of these
legal consequences are enforced against him by the same.
person.

III. No principle of ratification can apply to this case.
Frauds and violations of the law cannot be aided by any
sort of adoption.   They are incapable of ratification.   A
principal may ratify a lawful act, done without authority,
or adopt a transaction which he is not bound to recognize;
but there must be some privity or relation between the
ratifying party and the actor, or subject matter.   Here the
defendant had no connection with the sale to the plaintiff,
and was in no way affected by it.   He took the property as

Briggs *v.* Merrill.

if no sale had been attempted. No proceeding on his part against other parties could work a ratification, by the defendant, of that sale. The law fixed its character, and no act of any party could change it. Here the defendant has done nothing in the nature of a ratification or waiver of the fraud. On the contrary, his levy ignored and repudiated the illegal sale.

IV. The law works a practical forfeiture against the fraudulent purchaser. He loses what he pays. Unless the fraudulent purchaser suffers this loss, there is no restraint on frauds of this kind. In this case the plaintiff recovers the value of the property, paying only his note, if anything, while the defendant is mulcted in costs for pursuing strictly legal remedies.

V. We submit that the defendant was not called on to repudiate the note, and could not. It necessarily passed to the receiver, along with the other property of the defendant. The creditors were entitled to it. The provision about applying the note, added nothing to the legal effect of the assignment to the receiver, nor was it at all material that it was to be applied upon the judgment due the defendant, instead of the demand of some other creditor.

VI. The defendant cannot be estopped from setting up the defense of fraudulent sale. It was a fraud practiced against him, not one in which he had any participation. Estoppels must be equitable. They will not be raised to shield a fraudulent wrongdoer.

VII. Fraud in the sale from the judgment debtors to the plaintiff was apparent in the design to hinder and delay creditors, and in the transfer of partnership property from an insolvent firm to a purchaser for the consideration, in part, of an antecedent debt due him from one of the partners, and in part on a long credit. (*Ransom* v. *Van Deventer*, 41 *Barb.* 307. *Wilson* v. *Robertson*, 21 *N. Y.* 587. *Browning* v. *Hart*, 6 *Barb.* 91.)

JOHNSON, J. This is a motion for a judgment upon a verdict in favor of the plaintiff, ordered by the justice at the circuit, subject to the opinion of the court at general term. In the course of the trial, the defendant objected to certain evidence offered by the plaintiff, and excepted to the ruling of the justice admitting it. He also excepted to the ruling and decision ordering a verdict in the plaintiff's favor, subject to the opinion of this court. In this condition of things it was erroneous to order a verdict subject to the opinion of the court, as the defendant is thereby deprived of the opportunity of having his exceptions considered. Such a ruling, under such circumstances, is a mistrial, and a new trial should be ordered on account of the error, unless the exceptions are waived by the defendant. The plaintiff moves for judgment on his verdict, submitting the case and his points without argument. The defendant opposes the motion by submitting his points, without argument. In his points, no reference whatever is made to the exceptions upon the trial, but the motion is opposed wholly upon the merits. This being the case, the defendant must be deemed to have waived his exceptions taken at the trial, and consented that the court might decide the motion upon the merits, irrespective of his exceptions.

The case upon the facts is, I think, novel and quite peculiar. The action was for the wrongful taking and conversion by the defendant, of the plaintiff's property. The defendant justified the taking, by virtue of an execution issued upon a judgment in his favor for $111.10, in a justice's court, against Henry S. Briggs and Alexander M. Briggs, two brothers of the plaintiff. The property was sold by the constable, and bid in by the defendant at such sale. It appeared in evidence that the property in question had been the property of H. S. and A. M. Briggs, and that they sold it to the plaintiff after the action in the justice's court had been commenced against them by the

Briggs *v.* Merrill.

defendant. On this sale and purchase between the plaintiff and his brothers, the plaintiff turned out as part of the purchase price, a promissory note for $50, which he held against Henry S. Briggs, and which he had held for about two years. For the balance of the purchase price, which was $100, he gave his promissory note, payable eight months from date. The defendant claimed that this sale and purchase by the plaintiff, of the property in question, was made for the purpose of hindering, delaying and defrauding the creditors of H. S. and A. M. Briggs, and gave evidence tending to show that such was the case; showing, among other things, that about the time the action was commenced in the justice's court, they turned out all the property they then had and owned to their father, except the wagon and harness in question, which the plaintiff bought after the action was commenced; and that they were in failing and insolvent circumstances at the time. Other facts and circumstances were shown, tending to establish the fraudulent character of the transaction. The constable's sale of the property in question was on the 23d of March, and this action was commenced soon thereafter. The complaint was verified by the plaintiff March 31, 1868. The sale by the constable satisfied the defendant's judgment in part only. After the sale, and after this action had been commenced, the defendant undertook, by proceedings supplementary to execution, to discover other property belonging to the defendants in that judgment, which he might have applied in satisfaction of the balance due thereon. On those proceedings, the defendants were examined, and the plaintiff's note of $100, given on the purchase of the property in question, was discovered in their possession. The referee appointed by the county judge, in the supplementary proceedings, reported the discovery of this note to such judge, on the 10th of April, 1868, and on the same day the judge made an order requiring the referee to keep such note and deliver it over to the

receiver to be thereafter appointed, to be applied in satisfaction of the defendant's judgment. A receiver was appointed in those proceedings on the 17th of April following. The same person who had been appointed referee, was appointed receiver, and had the note in his possession upon this trial. So far as appears, nothing had been done with the note, by the receiver, at the time of the trial. The value of the wagon and harness in question was agreed upon by the parties at $166. Upon this state of facts, the justice, at the circuit, held and ruled that the defendant could not keep both the wagon and harness and the note. That by taking the note, given upon the purchase of the property by the plaintiff, by virtue of his proceedings supplementary to execution, for the purpose of having it applied to the satisfaction of the judgment, the defendant had ratified the plaintiff's purchase, and affirmed its validity, he knowing at the time such note was discovered by the referee, that it was given in part payment of the property in question; and ordered the jury to find a verdict for the plaintiff for the value of the property as agreed upon, subject to the opinion of the court at general term.

This ruling at the circuit proceeded, necessarily, upon the assumption that the purchase of the property by the plaintiff had been shown to be fraudulent and void as against the creditors of H. S., and A. M. Briggs, but that the defendant by taking the note given for the purchase price, in the subsequent legal proceedings, had thereby ratified and sanctioned the plaintiff's purchase, and precluded himself from insisting upon the fraudulent character of such purchase as a defense to the action. This motion for judgment by the plaintiff proceeds, also, upon the same assumption. This ruling, and direction of the learned justice at the circuit, was clearly erroneous. It is impossible to make the taking of that note by legal process operate as a ratification by the defendant of that fraudulent sale and purchase, and an admission of its validity, or a

Briggs *v.* Merrill.

waiver of the fraud. The trade as between the plaintiff and his brothers, the judgment debtors, was a valid transaction. As between them, the title to the wagon and harness vested in the plaintiff, and the note belonged to the debtors. But the note having been given in part performance of a bargain entered into for the purpose of defrauding the creditors of the vendors of the property in question, its collection could not be enforced by the receiver, or by the defendant. It was still an executory part of that fraudulent arrangement, and the law will not assist in its enforcement. This was expressly held in *Nellis* v. *Clark*, (20 *Wend.* 24,) which decision was affirmed in the Court of Appeals. (4 *Hill*, 424.) The principle established is that neither the payee nor any holder, who is not an innocent *bona fide* holder for value, before the note becomes due, can enforce its collection, against the maker. The law will not aid in carrying out any portion of the fraudulent bargain, but will leave all the parties who are chargeable with notice, to rely upon the option of the maker for the performance of the apparent obligation. The receiver does not stand in the situation of an innocent *bona fide* holder for value. He acquires title by legal process, and not in the regular course of dealing in commercial paper. Neither the receiver nor the defendant, for whose benefit the note was sought to be obtained, paid any value for it. The note being of no legal value, as against the maker, in the hands of the receiver, or of the defendant, could not operate in law as a ratification or sanction of the bargain upon which it was given, or estop the defendant in this action from insisting that the bargain was void as to him, by reason of the fraud in which it was conceived and carried out, and that the plaintiff acquired no title to the property, as against his claims as judgment creditor of the vendors. But even had the note been a valid security, and collectable in the hands of the receiver, the discovery and delivery of it into his hands,

could not by any possibility, in my judgment, have produced the legal results adjudged by the ruling at the circuit. Had it been a chose in possession, instead of a chose in action, I do not see why the defendant might not have taken it by virtue of his execution or proceedings supplementary, without relinquishing his right to take the property in question. As between the parties to that bargain, the trade would have been good as against all the world except the creditors of one of the contracting parties. As between themselves, each would have acquired a complete and perfect title to the property received by him in the transaction, as against the other. But as regards a creditor of one of the parties, the title of him who takes from the debtor does not vest, as against such creditor, and the creditor may levy upon the property and contest the title. The transaction is void as to creditors, and the title still remains in the debtor as to them. The creditor may therefore take it in satisfaction of his debt by regular process, as has always been held, if he can establish the fraud. As to the property which the debtor receives from the other party to the fraudulent contract or exchange, it is his to all intents and purposes, as against the other party and all the world. The other party to the transaction could never reclaim it by any legal proceeding, as the law would afford him no aid, and would not hear him allege that he had parted with it to aid in defrauding another. In every such case the party bargaining with a debtor, with such intent, does it at the peril of having that which he receives taken from him by the creditors of the debtor whom he is attempting to defraud, without having any remedy to recover what he parts with in carrying out the bargain. The law will leave him in the snare his own devices have laid. The property thus received by the debtor being his exclusively, the law devotes it to the payment of his debts, whenever it can be reached by legal proceedings on the part of his creditors. The law will not allow

him to retain it, and use it, in defiance of his creditors, because he acquired it by a fraudulent attempt to deprive them of their rights. It gives no such aid and comfort, or protection, to any party to a transaction entered into for such a purpose.

It follows that the motion for judgment in the plaintiff's favor, upon the verdict, must be denied, and judgment ordered for the defendant for his costs of the action.

TALCOTT, J., concurred.

MULLIN, P. J., did not sit; the action having been tried before him, at the circuit.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Johnson* and *Talcott*, Justices.]